IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
June 6, 2002 Session

**RUTH CAROLYN WELLS and RAYMOND L. WELLS,**
**Individually and as Husband and Wife**
**v.**
**J.C. PENNEY COMPANY, INC.**

**Appeal from the Circuit Court for Shelby County**
**No. 304583 T.D.-6      George H. Brown, Jr., Judge**

---

**No. W2002-00102-COA-R3-CV - Filed October 9, 2002**

---

This is a premises liability case. The plaintiff customer was shopping in a retail store. After a dispute with an unidentified customer over which customer would purchase certain merchandise, the unidentified customer grabbed the plaintiff's wrist. The plaintiff customer sued the retail store, asserting that the store had a duty to protect her from the customer's assault. The store moved for summary judgment, which the trial court granted. We affirm, finding that the assault was unforeseeable, and therefore the retailer did not have a duty of care to protect the customer from it.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

HOLLY K. LILLARD, J., delivered the opinion of the court, in which ALAN E. HIGHERS, J., and DAVID R. FARMER, J., joined.

David F. Kustoff and James S. Strickland, Memphis, Tennessee, for appellants, Ruth Carolyn Wells and Raymond L. Wells, Individually and as Husband and Wife.

G. Ray Bratton and Gregory W. O'Neal, Memphis, Tennessee, for appellee, J.C. Penney Company, Inc.

**OPINION**

This case demonstrates the dangers of the cut-throat arena of after-Christmas bargain shopping. On January 20, 1999, Plaintiff/Appellant Carolyn Wells ("Wells") was shopping at a J.C. Penney's ("Penney's") department store. Wells decided to purchase some Christmas clearance merchandise, namely, collectable crystal figurines. After she gathered approximately ten of the crystal figurines, two Penney's sales associates offered to place them on a shelf behind the counter while Wells continued shopping. When Wells returned to make her purchase, the crystal figurines were still on the shelf behind the counter. Penney's cash registers, however, were temporarily not

functioning, so Wells went to another department in the store to continue shopping. When she came back to purchase the crystal figurines, eight of them were missing and the remaining two, which were crystal bears, were at the front counter. Wells asked about the missing crystal figurines and was told that they had been returned to the sales floor. After Wells put her hands on the two remaining crystal bears, an unidentified female customer cursed her and ordered her to "get your g--d--- hands off my f-----g bears." Wells did not let go of the bears, but asked a Penney's employee to call for security and management. The employee did not respond.

The customer walked toward Wells, with Wells still holding the bears. Wells again asked the Penney's employee to call security and management to settle the issue of who would be allowed to purchase the bears. Again, the Penney's employee did not respond. Wells tried to explain her view that, since neither she nor the angry customer had yet purchased the crystal bears, the store manager should decide which would be permitted to purchase them. Wells then asked the angry customer her name. The customer responded, "F--- you." Wells replied, "That's a really nice name. Do you use that every day?" She did not let go of the two bears. The angry customer then reached across Wells and grabbed her wrist, causing one of the collectable crystal bears to fall to the floor and shatter.[1]

At this point, at Wells's request, the Penney's employee called the security guard. After the security guard arrived, the angry unidentified customer was permitted to purchase the remaining unbroken crystal bear. Wells apparently left the Penney's store with no crystal bears.

Thereafter, Wells and her husband, Raymond L. Wells, filed suit against J.C. Penney Company alleging common law negligence for failure to properly operate and maintain the store, and for failure to take reasonable steps to protect its customers and visitors when it knew, or had reason to know, that criminal acts against its customers and visitors on its premises were reasonably foreseeable. Wells sought $550,000 in damages.[2] Her husband, Raymond L. Wells, sought $50,000 in damages for deprivation of Mrs. Wells's earnings, society, services, company, and consortium. Penney's filed an answer, and then a motion for summary judgment. The trial court, without elaborating on its reasoning, granted Penney's motion for summary judgment. From this order, Wells now appeals.

On appeal, Wells argues that Penney's was not entitled to judgment as a matter of law because Wells's requests for security and management made the harm to Wells foreseeable such that Penney's had a duty to prevent the harm. Therefore, Wells contends, summary judgment was improper.

---

[1] Although it does not bear on the issues on appeal, the record is not crystal clear on the disposition of the remaining eight figurines.

[2] In discovery responses, Wells claimed injuries to her rotator cuff, shoulders, neck, and back. She said that she incurred medical expenses of almost $16,000, and had had surgery on her neck and her shoulder. Her physician gave her a disability rating of 15% to the whole body and 10% to the upper extremity. Wells also sought more than $12,000 in lost wages, and claimed that she was suffering from posttraumatic stress disorder, for which she was taking medication.

A motion for summary judgment should be granted when the movant demonstrates that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. Tenn. R. Civ. P. 56.04. The party moving for summary judgment bears the burden of demonstrating that no genuine issue of material fact exists. *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997). On a motion for summary judgment, the court must take the strongest legitimate view of the evidence in favor of the nonmoving party, allow all reasonable inferences in favor of that party, and discard all countervailing evidence. *Id.* In *Byrd v. Hall*, 847 S.W.2d 208 (Tenn. 1993), the Tennessee Supreme Court stated:

> Once it is shown by the moving party that there is no genuine issue of material fact, the nonmoving party must then demonstrate, by affidavits or discovery materials, that there is a genuine, material fact dispute to warrant a trial. In this regard, Rule 56.05 [now Rule 56.06] provides that the nonmoving party cannot simply rely upon his pleadings but must set forth *specific facts* showing that there is a genuine issue of material fact for trial.

*Id.* at 211 (citations omitted).

Summary judgment is only appropriate when the facts and the legal conclusions drawn from the facts reasonably permit only one conclusion. *Carvell v. Bottoms*, 900 S.W.2d 23, 26 (Tenn. 1995). Since only questions of law are involved, there is no presumption of correctness regarding a trial court's grant of summary judgment. *Bain*, 936 S.W.2d at 622. Therefore, our review of the trial court's grant of summary judgment is de novo on the record before this Court. *Warren v. Estate of Kirk*, 954 S.W.2d 722, 723 (Tenn. 1997).

Because Wells sued Penney's under a theory of common law negligence, the determinative issue on appeal is whether Penney's owed Wells a duty to protect her from the physical assault by the unidentified customer. Under Tennessee law, to prove a claim for negligence, the plaintiff must prove (1) that the defendant owed the plaintiff a duty of care; (2) that the defendant breached that duty; (3) that the plaintiff sustained an actual loss due to the breach; (4) that the defendant was the actual cause of the loss to the plaintiff; and (5) that the defendant was the proximate cause of the loss to the plaintiff. *See Rice v. Sabir*, 979 S.W.2d 305, 308 (Tenn. 1998). If the defendant does not have a duty to protect the plaintiff from the loss, there can be no action against the defendant for negligence.

The duty of a merchant to protect a customer from the criminal acts of a third party is discussed in *McClung v. Delta Square Limited Partnership*, 937 S.W.2d 891 (Tenn. 1996). In *McClung*, the plaintiff's wife was abducted at gunpoint from a Wal-Mart parking lot. *Id.* at 893-94. She was subsequently raped and murdered by her kidnapper. *Id.* at 894. The plaintiff sued the defendant Wal-Mart, alleging that Wal-Mart had a duty to protect his wife from the criminal acts of

the kidnapper. *Id.* The *McClung* court held:

> A business ordinarily has no duty to protect customers from the criminal acts of third parties which occur on its premises. The business is not to be regarded as the insurer of the safety of its customers, and it has no absolute duty to implement security measures for the protection of its customers. However, a duty to take reasonable steps to protect customers arises if the business knows, or has reason to know, either from what has been or should have been observed or from past experience, that criminal acts against its customers on its premises are reasonably foreseeable, either generally or at some particular time.

*Id.* at 902. Thus, although a business generally has no duty to protect its customers from the criminal acts of third parties, such a duty arises if the criminal acts are reasonably foreseeable. The *McClung* court further stated that "the foreseeability of harm and the gravity of harm must be balanced against the commensurate burden imposed on the business to protect against that harm," and that "in cases in which a lesser degree of foreseeability is present or the potential harm is slight, less onerous burdens may be imposed." *Id.* at 902-04. Under this balancing test, the *McClung* court considered the number of crimes that had recently taken place in the vicinity of the Wal-Mart parking lot and found that the attack was reasonably foreseeable.[3] *Id.* at 904.

Wells argues that, under *McClung*, her injury was foreseeable to such a degree that Penney's owed Wells a duty of care to protect her from the actions of the unidentified customer. Wells contends that her two requests for security and management prior to the physical altercation made the physical assault foreseeable so as to impose on Penney's a duty to protect Wells.

Wells relies on *Staples v. CBL & Associates, Inc*., 15 S.W.3d 83 (Tenn. 2000), in which the balancing test in *McClung* was applied to a retail store. In *Staples*, the plaintiff customer, while "visibly shaken," told two department store employees that she was being stalked by a man who had followed her to several stores in the shopping mall. *Id.* at 86. The store employees did not call for security and, although they promised, failed to watch the plaintiff as she walked from the store to her truck. *Id.* The plaintiff was subsequently kidnapped by the stalker. The plaintiff customer sued the store, alleging that it breached its duty to protect the plaintiff from the stalker. *See id.* The *Staples* court found that the exchange between the plaintiff and the defendant store's employees put the store on notice, and therefore the harm she encountered was foreseeable. *Id.* at 90-91.

In this case, prior to the customer grabbing her wrist, Wells made two requests that the Penney's employee call security and the manager. The stated reason for the request, however, was not Wells's fear for her safety, but rather her desire to have the manager or security guard decide

---

[3]The court cited the following incidents that occurred in the seventeen months prior to Mrs. McClung's abduction: "[A] bomb threat, fourteen burglaries, twelve reports of malicious mischief, ten robberies, thirty-six auto thefts, ninety larcenies, and one attempted kidnapping on a parking lot adjacent to the defendants' parking lot . . . ." *McClung*, 937 S.W.2d at 904.

-4-

which customer would be permitted to purchase the two crystal bears. Moreover, Wells's actions do not indicate that she feared a physical assault. When the angry customer cursed her, Wells did not let go of the crystal bears or leave the vicinity. When the customer walked toward her, Wells still did not let go of the crystal bears. Instead, she explained her view that the manager should determine which customer would be permitted to purchase the figurines, and asked the unidentified customer her name. When the customer responded with yet another expletive,[4] Wells's response was cavalier, and she still did not let go of the figurines and leave the vicinity. Wells's actions prior to the customer grabbing her wrist indicate that neither she nor the Penney's employees foresaw that the customer would assault Wells over the crystal bears. In addition, unlike *McClung*, which involved an abduction at gunpoint and subsequent rape and murder, the gravity of harm in this case is low; the customer grabbed Wells's wrist, resulting in one of the crystal bear figurines falling and shattering. These circumstances do not give rise to a duty by Penney's to protect Wells from the assault by the unidentified customer. To hold otherwise would make Penney's "an insurer of the safety of its customers," which is not the law in Tennessee. *McClung*, 937 S.W.2d at 902. Therefore, we conclude that the trial court did not err in granting Penney's motion for summary judgment.

The decision of the trial court is affirmed. Costs are taxed to the appellants, Ruth Carolyn Wells and Raymond L. Wells, and their surety, for which execution may issue if necessary.

_____
HOLLY K. LILLARD, JUDGE

---

[4] Apparently, after-Christmas bargain shopping had somewhat diminished the customer's Christmas spirit.