**Larry Darnell WOODLEY, Plaintiff,**

v.

**CITY OF MEMPHIS, TENNESSEE; Shelby County, Tennessee; Correctional Medical Services, Inc., Defendants.**

No. 06–2091 M1/V.

United States District Court,
W.D. Tennessee,
Western Division.

Sept. 30, 2006.

Jeffrey S. Rosenblum, Marc E. Reisman, Rosenblum & Reisman, Memphis, TN, for Plaintiff.

Barbaralette G. Davis, City Attorney's Office, Henry L. Klein, Apperson Crump & Maxwell, PLC, Debra L. Fessenden, Bruce I. Griffey, W. Timothy Hayes, Jr., The Hardison Law Firm, Jerry O. Potter, The Hardison Law Firm, Memphis, TN, for Defendants.

**ORDER DENYING IN PART AND GRANTING IN PART DEFENDANT CITY OF MEMPHIS' MOTION TO DISMISS**

McCALLA, District Judge.

Before the Court is Defendant City of Memphis' Motion to Dismiss, filed February 17, 2006. Plaintiff responded in opposition on May 22, 2006. For the following reasons, the Court DENIES in part and GRANTS in part Defendant's Motion to Dismiss.

**I. Procedural and Factual Background**

This case arises out of Plaintiff Larry Woodley's arrest and pre-trial incarceration in Shelby County on January 14, 2005. Mr. Woodley ("Plaintiff") commenced this action in the Circuit Court for the Thirtieth Judicial District of Tennessee, Shelby County, Tennessee, Case No. CT–000187–06, Division VII on or about January 13, 2006, alleging the denial of necessary medical care resulting in his hospitalization and surgery. The case was removed from the state court to this Court on February 10, 2006.

**A. The Police Officers' Conduct**

According to the allegations in the Complaint, on January 10, 2005, Plaintiff arrived at St. Francis Hospital with complaints of nausea, vomiting, shortness of breath, and chest pain. At the time of his admission, Plaintiff gave the hospital his brother's name of William Woodley, and he was admitted as William Woodley. Plaintiff feared that he would be immediately taken to the jail on an outstanding warrant if he gave the hospital his real name. (Compl.¶ 7.)

Plaintiff remained in the hospital undergoing treatment for a serious heart condition called cardiomyopathy until January 14, 2005. At that time, he was arrested and taken into custody by City of Memphis police officers Jason Randolph and Kerby Windless ("MPD officers"). (Compl.¶ 8.)

The MPD officers arrested Plaintiff in his hospital room and took him into custody in front of his physician, Dr. Mark Young, and at least one of the nurses that had treated him during his hospital stay. The MPD officers explained to Dr. Young that while the patient had been admitted under the name of William Woodley, his real name was Larry Woodley and that he had an outstanding warrant for his arrest. (Compl.¶ 9.)

At the time of Plaintiff's arrest, Dr. Young advised the MPD officers that if they were going to incarcerate Plaintiff, they needed to make sure that Plaintiff received certain medications precisely as prescribed. Dr. Young then provided the MPD officers with a copy of Plaintiff's medication prescription sheet to take with them. Dr. Young advised the MPD officers that Mr. Woodley had a serious heart condition and needed to take the prescribed medication. (Compl.¶ 10.)

The MPD officers then transported Plaintiff to the Criminal Justice Complex located at 201 Poplar where he was booked. (Compl.¶ 11.) Plaintiff alleges that the MPD officers did not inform the jail personnel or the medical personnel that Mr. Woodley had just been released from the hospital with physician's orders to take certain medications immediately. (Compl.¶ 12.)

**B. The Jail and Medical Services**

Plaintiff alleges that even if the MPD officers advised staff at the jail and medical staff that Mr. Woodley suffered from a serious medical condition and provided such staff with the list of Plaintiff's prescriptions that he needed to receive immediately, Defendants Correctional Medical Services ("CMS") and Shelby County

failed to provide him with his medication. (Compl.¶ 13.)

Upon arrival at the jail, Plaintiff allegedly told the deputy jailers about his heart condition and about the prescribed medications. He also told the CMS employees about his condition and what Dr. Young had said about his medications. He told employees of both CMS and the jail that he had been admitted to the hospital under his brother's name and that his prescriptions had been written under his brother's name. (Compl.¶ 14.)

Plaintiff's medical history and screening were performed by Betty Mitchell, who Plaintiff believes to be an employee of CMS. Ms. Mitchell noted in Plaintiff's screening that he had a heart condition and that he had been treated at St. Francis for several days prior to his incarceration. Ms. Mitchell additionally noted that a form with a list of Plaintiff's medications was attached to his screening form. (Compl.¶ 15.)

However, Plaintiff allegedly did not receive any of the prescribed medications during his stay at the jail, and his heart condition worsened. (Compl.¶ 16.)

On January 15, 2005, Plaintiff complained about not being able to breathe and that both of his legs were numb and cold. A nurse who saw him determined that he did not need any medical treatment. This nurse was an employee of CMS. Plaintiff continued to complain about his condition. (Compl.¶ 18.)

#### C. Admission to Medical Center

Plaintiff did not receive any medical attention until January 17, 2005, when he was rushed to the Regional Medical Center at Memphis ("Med") and diagnosed with left arterial thrombosis. Plaintiff was taken into surgery on January 18, 2005, and remained in the hospital until February 3, 2005. (Compl.¶ 18.)

Plaintiff was admitted to the Med Intensive Care Unit for approximately two weeks, during which he underwent a left thrombectomy. Soon after the surgery, Plaintiff suffered complications in his right leg and was forced to undergo a right thrombectomy. (Compl.¶ 19.)

#### II. Standard of Review

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss the plaintiff's complaint "for failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). When considering a Rule 12(b)(6) motion to dismiss, a court must treat all of the well-pleaded allegations of the complaint as true, *Saylor v. Parker Seal Co.*, 975 F.2d 252, 254 (6th Cir.1992), and must construe all of the allegations in the light most favorable to the plaintiff, *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). "A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984).

#### III. Analysis

Plaintiff alleges two causes of action against the City of Memphis ("City") in its Complaint. The first cause of action is the state tort claim of negligence. Defendant challenges this allegation solely on the ground that Plaintiff is unable to demonstrate that the police officers' actions were the proximate cause of Plaintiff's injury. The second cause of action is brought pursuant to 42 U.S.C. § 1983, alleging a violation of Plaintiff's Eighth and Fourteenth Amendment rights. Defendant challenges both these allegations. For the following

reasons, the Court DENIES Defendant's Motion to Dismiss as to the negligence claim, DENIES Defendant's Motion to Dismiss as to the § 1983 claim insofar as it alleges a violation of the Fourteenth Amendment, and GRANTS Defendant's Motion to Dismiss as to the § 1983 claim insofar as it alleges a violation of the Eighth Amendment.[1]

Finally, Plaintiff also agrees that, as a matter of law, "punitive damages are not recoverable against a municipality under § 1983." (Mot. to Dismiss of Def. City of Memphis, Tenn. ("Def. Mot."), February 17, 2006, Doc. 3–2, at 6); (*see* Pl. Resp., at 14 ("Plaintiff submits that the City accurately stated the law on punitive damages against municipalities in its Memorandum.")) The Court therefore GRANTS Defendant's motion to dismiss as to the claim for punitive damages.

1. The Court GRANTS Defendant's motion to dismiss as to Plaintiff's Eighth Amendment claim. "Plaintiff ... acknowledge[s] that the current state of the law regarding the Eighth Amendment is as set forth in the City's Memorandum" supporting its motion to dismiss. (Pl.'s Resp. to Mot. to Dismiss Filed by Def. City of Memphis, Tenn. ("Pl. Resp."), May 22, 2006, Doc. 13–3, at 9.) In its Motion to Dismiss, Defendant cites the Supreme Court's decision in *Graham v. Connor:* "The Eighth Amendment ban against cruel and unusual punishment does not apply 'until after conviction and sentence.'" (Mot. to Dismiss of Def. City of Memphis, Tenn. ("Def. Mot."), February 17, 2006, Doc. 3–2, at 4) (citing *Graham v. Connor,* 490 U.S. 386, 393, n. 6, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)). Defendant then argues that "[s]ince there has been no conviction or sentence in this case, there is no basis for an Eighth Amendment claim." (Def. Mot., at 4.)

Plaintiff not only agrees to the law as stated by Defendant, but also does not dispute the fact that "there has been no conviction or sentence in this case." In other words, Plaintiff does not allege that he was anything other than a pre-trial detainee at the time of the alleged violations. The Eighth Amendment does not apply, and that claim is dismissed.

## A. Negligence: Proximate Cause

Plaintiff alleges the state tort claim of negligence, pursuant to the Tennessee Government Tort Liability Act. Tenn.Code Ann. § 29–20. Defendant's motion for dismissal of Plaintiff's state law negligence claim rests entirely on its assertion that the officers' failure to alert the jailers to Plaintiff's medical condition and needs was not the proximate cause of Plaintiff's injuries.[2] (Def. Mot., Doc. 3–2, at 3.) The City asserts this based on the fact that Plaintiff himself informed the jailers of his condition and need for medicine. (Def. Mot., Doc. 3–2, at 2–3.) Therefore, the City asserts, the officers' failure could not be the proximate cause, as the jailers were aware of Plaintiff's condition and *they* failed to act.[3]

As Plaintiff notes in his response to Defendant's Motion to Dismiss, it is possi-

2. The City does not dispute the existence of a duty, a breach of duty, or the injury. Rather, it disputes the assertion that the breach *caused* the injury. Nor does the City invoke immunity.

3. The City essentially contends that Plaintiff's act of telling the jailers himself about his medical condition and prescription needs constituted an intervening act. Nowhere does Defendant contend that the jailers' failure to act on that information was an intervening act. In its Motion to Dismiss, Defendant asserts:

> [T]he Complaint acknowledges that Plaintiff himself told the jailers about his condition and medications that he had been prescribed. He further told the CMS employees about his condition and what the doctor had said about his medications. He told the employees of both CMS and Shelby County that he had been admitted to the hospital under his brother's name and that his prescriptions had been written under his brother's name. Plaintiff himself told them everything they needed to know about his treatment and identity.

(Def. Mot., Doc. 3–2, at 2–3) (internal citations omitted).

ble that more than one proximate cause exists for an injury. *See McClung v. Delta Square Ltd. Partnership,* 937 S.W.2d 891, 905 (Tenn.1996)(holding that administrator of estate of customer who had been abducted from shopping mall parking lot and was subsequently raped and murdered could allege negligence by mall's owner and anchor tenant for failing to provide security in parking lot).

 *McClung* also affirmed another, more important principle. It is true that "a superseding, intervening cause can break the chain of causation." *Id.* However, "there is no requirement that a cause, to be regarded as the proximate cause of an injury, be the sole cause, the last act, or the one nearest to the injury, provided it is a substantial factor in producing the end result." *Id.* Moreover, "[a]n intervening act, *which is a normal response created by negligence,* is not a superseding, intervening cause so as to relieve the original wrongdoer of liability, *provided the intervening act could have reasonably been foreseen and the conduct was a substantial factor in bringing about the harm."* *Id.* (emphasis added); *see also White v. Lawrence,* 975 S.W.2d 525, 529 (Tenn.1998) ("[A]n intervening act will not exculpate the original wrongdoer unless it is shown that the intervening act could not have been reasonably anticipated" (internal quotations omitted)).

 While Plaintiff's decision to inform the jailers of his medical needs may indeed constitute an intervening act, it may reasonably be regarded as the normal and foreseeable response to the police officers' own failure to inform the jailers. It is therefore not necessarily a superseding intervening cause that relieves the police officers, and, therefore, the City, of liability. Taking the facts as presented by Plaintiff, Plaintiff's decision to inform the jailers was not sufficient to prevent the

harm. The police's failure was therefore arguably "a substantial factor in bringing about the harm."

 Finally, "[p]roximate cause, as well as the existence of a superseding, intervening cause, are jury questions unless the uncontroverted facts and inferences to be drawn from the facts make it so clear that all reasonable persons must agree on the proper outcome." *McClung,* 937 S.W.2d at 905; *see also White,* 975 S.W.2d at 529–530; *Bailey v. Floyd County Bd. of Educ.,* 106 F.3d 135, 145 (6th Cir.1997).

For the reasons discussed above, Plaintiff has properly alleged that the officers' alleged failure to alert the jailers to Plaintiff's condition and medical needs was a proximate cause of his alleged injuries. It is not at the pleading stage that this question be resolved as a matter of fact. Defendant's Motion to Dismiss Plaintiff's negligence claim is therefore DENIED.

### B. Fourteenth Amendment / Section 1983

Defendant moves for dismissal of Plaintiff's § 1983 claim that the denial of immediate medical care violated his rights under the Fourteenth Amendment. The Fourteenth Amendment to the United States Constitution provides that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. art. 14, § 1. Under the Civil Rights Act of 1871, "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any ... person ... to the deprivation of any rights ... secured by the Constitution ... shall be liable to the party injured in an action at law." 42 USCA § 1983. The Due Process Clause protects pre-trial detainees against deliberate indifference toward their serious medical needs. *See*

*Blackmore v. Kalamazoo County,* 390 F.3d 890, 895 (6th Cir.2004) ("The Eighth Amendment forbids prison officials from 'unnecessarily and wantonly inflicting pain' on an inmate by acting with 'deliberate indifference' toward the inmate's serious medical needs. Pretrial detainees are analogously protected under the Due Process Clause of the Fourteenth Amendment." (internal citations omitted)). For the following reasons, the Court DENIES Defendant's Motion to Dismiss as to Plaintiff's § 1983 claim for violation of his Fourteenth Amendment Due Process rights.

### 1. Plaintiff Must Allege More than Mere Negligence

Defendant moves for dismissal of the Fourteenth Amendment claim, alleging that more than an allegation of mere negligence is required to properly establish a claim. Defendant is correct that more than mere negligence must be alleged and that the alleged conduct must "shock the conscience" to rise to a to the level of a constitutional violation. *See County of Sacramento v. Lewis,* 523 U.S. 833, 849, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998) ("[L]iability for negligently inflicted harm is categorically beneath the threshold of constitutional due process."); *Sperle v. Michigan Dept. of Corrections,* 297 F.3d 483, 491 (6th Cir.2002) ("[S]imple negligence does not rise to the level of a substantive due process violation.").[4]

### 2. Whether Conduct "Shocks the Conscience" Depends on Circumstances

However, whether conduct shocks the conscience depends upon the circum-

stances. *Estate of Owensby v. City of Cincinnati,* 414 F.3d 596, 602 (6th Cir. 2005) ("In general, the level of culpability required to support section 1983 liability depends upon the circumstances of each case."). Conduct which shocks the conscience need not intentionally cause harm. In distinguishing separate sets of circumstances, the Sixth Circuit has noted that

> [i]n situations wherein the implicated ... municipal agent(s) are afforded a reasonable opportunity to deliberate various alternatives prior to electing a course of action (such as, for example, most occasions whereby corrections officials ignore an inmate's serious medical needs), their actions will be deemed conscience-shocking if they were taken with "deliberate indifference" towards the plaintiff's federally protected rights.

*Claybrook v. Birchwell,* 199 F.3d 350, 359 (6th Cir.2000); *see also Blackmore,* 390 F.3d at 895 ("Whether a convicted prisoner or a pretrial detainee, deliberate indifference to one's need for medical attention suffices for a claim under 42 U.S.C. § 1983.").

The Court contrasted such a situation involving opportunity for deliberation with one involving "a rapidly evolving, fluid, and dangerous predicament which precludes the luxury of calm and reflective pre-response deliberation...." *Claybrook,* 199 F.3d at 359. In this latter scenario, "public servants' reflexive actions 'shock the conscience' only if they involved force employed maliciously and sadistically *for the very purpose of causing harm* rather than

---

4. For purposes of Plaintiff's Fourteenth Amendment claim under § 1983, as distinguished from his state law claim, Plaintiff does not allege mere negligence. Rather, he explicitly alleges that "[t]he MPD officers arrested and jailed Larry Woodley in *deliberate indifference* to his health and welfare." (Compl. ¶ 28 (emphasis added)). The facts as stated in the Complaint include allegations that the treating doctor told the officers of Plaintiff's condition and his need to take prescribed medication. Moreover, they arrested Plaintiff in the hospital. The Court does not infer, as Defendant does, that Plaintiff alleges mere negligent conduct underlying his § 1983 claim.

in a good faith effort to maintain or restore discipline." *Claybrook,* 199 F.3d at 359 (internal quotations omitted) (emphasis added);[5] *see also Sperle v. Michigan Dept. of Corrections,* 297 F.3d 483, 492 (6th Cir. 2002) ("The key factor in custodial environments and other situations where deliberate indifference renders state actors liable for substantive due process violations is the ability of the officials to consider their actions in an unhurried, deliberative manner.").

Under the circumstances in the instant case, the Court finds that the appropriate standard is "deliberate indifference." Indeed, "[t]he deliberate indifference standard normally applies in cases, like the present one, where a pretrial detainee is alleged to have been denied adequate medical care." *Estate of Owensby,* 414 F.3d at 602. The situation was not "a rapidly evolving, fluid, and dangerous predicament which precludes the luxury of calm and reflective pre-response deliberation." *Claybrook,* 199 F.3d at 359. Rather, it is precisely the example given by the Sixth Circuit in *Claybrook,* the denial of medical care in a situation affording "a reasonable opportunity to deliberate various alternatives prior to electing a course of action." *Id.* Plaintiff need not allege malicious or sadistic conduct purposefully directed at causing harm. Defendant does not dispute this as the appropriate standard in this case, instead arguing only that the conduct did not rise to the level of conscience-shocking.

### 3. Whether Officers' Conduct Showed "Deliberate Indifference"

The Court must therefore determine whether the alleged conduct rises to the level of deliberate indifference for the purposes of a motion to dismiss. The Sixth Circuit has noted that "[d]eliberate indifference has been equated with subjective recklessness, and requires the § 1983 plaintiff to show that the state official knows of and disregards an excessive risk to [the plaintiff's] health or safety." *Ewolski v. City of Brunswick,* 287 F.3d 492, 513 (6th Cir.2002) (internal quotations omitted). Thus,

> the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. Having drawn the inference, the official must act or fail to act in a manner demonstrating "reckless or callous indifference" toward the individual's rights.

*Ewolski,* 287 F.3d at 513 (internal citation and quotations omitted). Where the alleged conduct is neither negligent nor intentional, "[w]hether conduct falling within this 'middle range' reaches the level of conscience shocking depends upon the facts and circumstances of the individual case." *Id.* at 510; *see also Lewis,* 523 U.S. at 849, 118 S.Ct. 1708 ("Whether the point of the conscience shocking is reached when injuries are produced with culpability falling within the middle range, following from something more than negligence but less than intentional conduct, such as reck-

---

**5.** Plaintiff argues that the "shocks the conscience" standard does not apply in the instant case, but that Plaintiff need only prove deliberate indifference. This misreads *Claybrook,* which does not separate the two standards. Rather, the case permits a finding of deliberate indifference in certain circumstances to constitute evidence that the conduct shocks the conscience. As *Claybrook*

notes, "[c]onduct of a law enforcement officer towards a citizen which 'shocks the conscience' denies the victim fundamental substantive due process.... *[A]ctions will be deemed conscience-shocking if they were taken with 'deliberate indifference'' towards the* plaintiff's federally protected rights." *Claybrook,* 199 F.3d at 359 (internal citations omitted) (emphasis added).

lessness or 'gross negligence,' is a matter for closer calls." (internal citation omitted)).

Defendant does not dispute that a question exists as to whether the officers were reckless in this regard, only that the conduct does not shock the conscience. Taking as true the facts as stated by Plaintiff, Plaintiff has alleged that the conduct of the officers demonstrates deliberate indifference toward the Plaintiff's right to medical treatment. Plaintiff has alleged that the officers were aware of facts from which the inference could be drawn that a substantial risk of serious harm existed, as they arrested Plaintiff at the hospital and the doctor and Plaintiff explicitly told them that he required medication for a serious condition. Plaintiff has also alleged that the officers failed to act and that such a failure demonstrated callous indifference toward his rights.

### 4. Proximate Cause

The Court infers, as did Plaintiff, that Defendant challenges the causation element of the § 1983 claim, as Defendant did so with respect to the negligence claim under state law. The Sixth Circuit has held that in certain circumstances where the "need for medical care [is] obvious ... [the plaintiff] need not prove that the officers' acts or omissions were the proximate cause of" the injury. *Estate of Owensby,*

414 F.3d at 604. The court distinguished between two general sets of circumstances involving the alleged need for medical care. In one, the "affliction is seemingly minor or non-obvious." *Id.* In such circumstances, "medical proof may be necessary to assess whether the denial of medical care caused a serious medical injury." *Id.*

The other category includes circumstances "where the individual had a serious need for medical care that was so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Id.* (internal quotations omitted). Medical proof of causation is not required in such a situation. *Id.*[6]

In the instant case, the Plaintiff argues that "[a] serious medical need was obvious ... because a licensed physician working in the hospital ... advised the police officers about his serious medical condition." (Pl.'s Resp. to Mot. to Dismiss Filed by Def. City of Memphis, Tenn. ("Pl. Resp."), May 22, 2006, Doc. 13–3, at 6.) The Court agrees with this reasoning.[7] Therefore, Plaintiff has sufficiently alleged that the officers' failure to inform the jailers of his medical needs was the proximate cause of his injury.

### 5. Whether Plaintiff Alleged a "Policy"

Defendant contends that Plaintiff has failed to allege a municipal policy or

---

**6.** The Court further reasoned:

This violation is not premised upon the "detrimental effect" of the delay, but rather that the delay alone in providing medical care creates a substantial risk of serious harm. When prison officials are aware of a prisoner's obvious and serious need for medical treatment and delay medical treatment of that condition for non-medical reasons, their conduct in causing the delay creates the constitutional infirmity. In such cases, the effect of the delay goes to the extent of the injury, not the existence of a serious medical condition.

*Estate of Owensby,* 414 F.3d at 604 (citing *Blackmore,* 390 F.3d at 899).

**7.** A doctor explicitly informing the officers of a detainee's medical needs, as allegedly occurred in the instant case, would appear to qualify as "medical proof" under the first category of cases involving alleged denial of medical care. The Court need not address this issue, however, as the Court holds that Plaintiff has properly alleged the obvious nature of his condition.

custom giving rise to the officers' conduct. It is true that a municipality may be liable only where the officials' conduct results from a policy or custom. The Supreme Court has noted that "a municipality can be sued under § 1983 but it cannot be held liable unless a municipal policy or custom caused the constitutional injury." *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* 507 U.S. 163, 166, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993).

### a. Failure to Train

Plaintiff alleges that the City failed to train its officers to properly identify and report a detainee's medical needs. Such a "failure to provide proper training may fairly be said to represent *a policy* for which the city is responsible, and for which the city may be held liable if it actually causes injury." *City of Canton, Ohio v. Harris,* 489 U.S. 378, 390, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989) (emphasis added).[8] "[C] laims such as respondent's—alleging that the city's failure to provide training to municipal employees resulted in the constitutional deprivation she suffered—are cog-

nizable under § 1983."[9] *Id.* at 392, 109 S.Ct. 1197. Plaintiff in the instant case has sufficiently alleged a failure by the City to train the police officers.

### b. Whether a Single Incident Suffices to Allege a Policy

Nevertheless, Defendant contends that it is insufficient to plead a single incident of unconstitutional treatment as demonstrative of a broader policy giving rise to that incident. At the pleading stage, however, a plaintiff need not point to specific facts regarding a policy or custom that caused the injury. *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* 507 U.S. 163, 168–69, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993). In *Leatherman,* the Court invalidated a "heightened pleading standard" for § 1983 claims than for other types of claims. *Id.* at 167–68, 113 S.Ct. 1160. The excessively-high pleading standard in that case had required the plaintiff to "do more than plead a single instance of misconduct." *Id.* at 167, 113 S.Ct. 1160.[10]

In an unpublished Sixth Circuit case on point, the relevant counts "of the plaintiffs'

---

**8.** The Court also noted:
> It may seem contrary to common sense to assert that a municipality will actually have a policy of not taking reasonable steps to train its employees. But it may happen that in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need.

> *City of Canton,* 489 U.S. at 390, 109 S.Ct. 1197.

**9.** While such claims are cognizable, "they can only yield liability against a municipality where that city's failure to train reflects deliberate indifference to the constitutional rights of its inhabitants." *City of Canton,* 489 U.S. at 392, 109 S.Ct. 1197. Here, this Court addresses whether the complaint sufficiently states a claim, not whether Plaintiff has point-

ed to evidence showing that the City is necessarily liable as a matter of fact. It suffices that Plaintiff has alleged a lack of training amounting to deliberate indifference.

**10.** Even the case to which Defendant cites for the opposite proposition does not actually stand for the proposition for which Defendant asserts it. *See City of Oklahoma City v. Tuttle,* 471 U.S. 808, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985). The Court held in that case that "[p]roof of a single incident of unconstitutional activity is not sufficient to impose liability . . ., *unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy."* *Id.* at 824–25, 105 S.Ct. 2427 (emphasis added). In other words, proof of a single incident can establish liability where a policy giving rise to that incident is proved.

Also, as is clear, *Tuttle* addressed the threshold requirement to establish *liability.* The threshold is of course substantially lower at the pleading stage.

complaint allege that the county's failure to train its employees in the proper use of excessive force was the cause of the decedent's constitutional injury .... These counts ... also allege that the ... municipality's failure to train demonstrates the deliberate indifference of the defendants." *Moreno v. Metropolitan General Hosp.*, 210 F.3d 372, 2000 WL 353537, *2 (6th Cir.2000). The Court held that "these allegations are sufficient to allege a failure to train claim. To require more would defeat the purpose of the notice pleading requirement and would result in the use of a higher pleading standard for section 1983 complaints." *Id.; see Leatherman*, 507 U.S. at 168, 113 S.Ct. 1160.

In the instant case, Plaintiff has alleged that the City lacked a policy "regarding the proper procedure for ensuring that arrestees would receive known, necessary medications." (Compl.¶ 28.) Plaintiff also claims that "[t]he City ... did not provide adequate training on the appropriate manner and means to recognize and deal with situations involving arrestees who have special medical needs upon arrest and incarceration." (Compl.¶ 28.) At this stage, these allegations suffice to make out a claim. The Court therefore DENIES Defendant's motion to dismiss the § 1983 claim for violation of his Fourteenth Amendment right to Due Process.

## IV. Conclusion

For the foregoing reasons, the Court DENIES in part and GRANTS in part Defendant's Motion to Dismiss.

So ORDERED.