IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
October 25, 2012 Session

**NORMA ELLINGTON AND CLIFTON ELLINGTON, INDIVIDUALLY AND AS NEXT FRIENDS AND NATURAL PARENTS OF JEROME ELLINGTON, Deceased**
**v.**
**JACKSON BOWLING & FAMILY FUN CENTER, L.L.C.,**
**JACKSON BOWLING & RECREATION CENTER, INC.,**
**AND JOHN DOE**

An Appeal from the Circuit Court for Madison County
No. C-09-310      Roy B. Morgan, Jr., Judge

No. W2012-00272-COA-R3-CV - Filed February 19, 2013

This is a wrongful death action predicated on premises liability. The lawsuit arose out of a fight in the parking lot of a bowling alley owned by the defendants. After the plaintiffs' 19-year-old son punched a member of a rival gang, another member of the rival gang drove up and shot the plaintiffs' son in the chest, killing him. The plaintiffs filed this lawsuit against the defendant bowling alley owners for the wrongful death of their son; they asserted that the defendants acted negligently or recklessly in failing to provide adequate security on their premises. The defendants filed a motion for summary judgment. The trial court granted the motion on two bases: (1) the defendants did not owe a duty to the plaintiffs' son to protect him from the criminal acts of others, and (2) the undisputed evidence demonstrated that the plaintiffs' son was at least 50% at fault for his death. The plaintiffs now appeal. We reverse, finding that the standard for summary judgment under *Hannan v. Alltel Publishing Company* has not been met in this case.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is
Reversed and Remanded**

HOLLY M. KIRBY, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J., W.S., and J. STEVEN STAFFORD, J., joined.

Randall J. Fishman and Richard S. Townley, Memphis, Tennessee, for the Plaintiffs/Appellants Norma Ellington and Clifton Ellington, individually and on behalf of Jerome Ellington

Richard Glassman and James F. Horner, Jr., Memphis, Tennessee, for the Defendants/Appellees Jackson Bowling & Family Fun Center, L.L.C., and Jackson Bowling & Recreation Center, Inc.

## OPINION

### FACTS AND PROCEEDINGS BELOW

On the evening of January 28, 2009, 19-year-old Jerome Ellington ("Decedent Ellington") went with a group of his friends to the Defendant/Appellee Jackson Bowling & Family Fun Center, L.L.C. ("Jackson Bowling"). As fate would have it, that same night, Ledarren Hawkins ("Hawkins") and a group of his friends were also patrons at Jackson Bowling. Evidence in the record indicates that Decedent Ellington's group was associated with the "Crips" gang. Hawkins' group was associated with the rival "Bloods" gang.

On past occasions, Jackson Bowling had hired trained security personnel for their premises. In 2007 and 2008, Jackson Bowling hired an outside security service, Hayes Security, to provide security services for both the bowling alley and its adjoining parking lot. At other times, Jackson Bowling had hired off-duty sheriff's deputies for security as well as crowd control. On the night in question, however, Jackson Bowling did not employ an outside security service. Instead, it put two of its own regular employees — Ed Henry and Knox Crider — in charge of "crowd control." As designated "crowd control" employees, their responsibilities included making sure that bowlers were wearing bowling shoes and throwing only one ball at a time down the bowling lane, preventing loitering by asking persons not participating in bowling activities to leave the premises, and overall trying to maintain a good atmosphere for the bowling alley's customers. That night, these two designated employees did not wear uniforms or dress in conformity with Jackson Bowling's dress code.

In the course of the evening of January 28, 2009, members of Decedent Ellington's group and Hawkins' group exchanged words inside the bowling alley. The verbal encounters between the two groups did not, however, turn into a physical altercation while they were inside the bowling alley.

Finally, after the exchanges between Decedent Ellington's group and Hawkins' group, at about 10:00 p.m., a Jackson Bowling employee announced over the intercom that persons who were not bowling needed to leave the bowling alley. Some evidence indicates that

Jackson Bowling employees made no immediate effort beyond the announcement to clear non-bowlers from the building. About 15 to 20 minutes later, "crowd control" employee Ed Henry approached Hawkins specifically and told him to leave the bowling alley because he was underage and had attempted to enter the karaoke bar attached to the bowling alley.[1] Hawkins apparently did not resist Henry's directive; he and his group left the bowling alley and walked into the parking lot. As they left, some in Hawkins' group flashed "gang signs" with their hands, aimed in the direction of the Ellington group. Decedent Ellington and his group then followed the Hawkins group out of the bowling alley and into the parking lot.

Chilling surveillance video from the bowling alley parking lot captured the ensuing fracas. Perhaps inevitably, once both groups got outside, they began arguing. Some evidence indicates that Decedent Ellington was the first to escalate the verbal conflict into a physical one; he apparently threw the first punch at an unidentified individual from Hawkins' group. This incited a "brawl" between the groups. Within four seconds after the fray began, Jackson Bowling's designated "crowd controllers," Ed Henry and Knox Crider, exited the building to break up the fight. Jackson Bowling employees Kylan King and Darrell King accompanied them into the parking lot to disperse the crowd. At about the same time, Hawkins drove up to the scene in his Chevy Blazer, got out of the vehicle wielding a sawed-off shotgun, and shot Decedent Ellington in the chest. Ellington's gunshot wound proved to be fatal. Hawkins was later tried and convicted of the murder of Decedent Ellington.

On October 22, 2009, Plaintiff/Appellants Norma Ellington and Clifton Ellington, individually and on behalf of their son, Decedent Ellington (collectively, "the Ellingtons"), filed this lawsuit in the Circuit Court for Madison County against Jackson Bowling for the wrongful death of Decedent Ellington.[2] The Ellingtons alleged that Jackson Bowling negligently or recklessly failed to provide adequate security for Decedent Ellington (Count I – nonfeasance), and/or negligently or recklessly undertook the duty to provide security for Decedent Ellington (Count II – misfeasance). They asserted that "[t]he previous crime in the area where Plaintiff was shot and in the immediate vicinity made the commission of the crime against Plaintiff reasonably foreseeable." The Ellingtons sought $2 million in compensatory damages and $1 million in punitive damages.

Jackson Bowling filed an answer denying liability. As an affirmative defense, Jackson Bowling's answer asserted the comparative fault of Decedent Ellington. It also asserted as

---

[1] The record is unclear, but indicates that a karaoke bar owned by an entity related to Jackson Bowling is connected somehow to the bowling alley.

[2] Jackson Bowling & Recreation Center, Inc., was added as a defendant in an amended complaint filed on November 9, 2009. We refer to both Jackson Bowling entities collectively as "Jackson Bowling."

an affirmative defense that the intentional actions of Hawkins contributed to and/or was the superseding, intervening cause of Decedent Ellington's death.

Discovery ensued. The parties took the depositions of several witnesses, including Jackson Bowling manager Darren Goldie; a member of Hawkins' group who was present at the bowling alley; a member of Decedent Ellington's group who was present at the bowling alley; and Plaintiffs Norma and Clifton Ellington. Those depositions were filed with the trial court.

On August 26, 2011, Jackson Bowling filed a motion for summary judgment. In support of the motion, Jackson Bowling submitted a statement of undisputed facts and the affidavit of Andy Kim, one of the owners of Jackson Bowling who was present at the bowling alley on the night of the shooting. Kim claimed in his affidavit that, prior to the night of Ellington's shooting, there had never before been an altercation between gang members on the premises of Jackson Bowling; never before had there been a shooting on the premises of Jackson Bowling; and never before had any customer, employee, or other individual been the victim of gang violence on the premises of Jackson Bowling. These assertions in Kim's affidavit were supported by the testimony of Jackson Bowling manager Goldie in his deposition. Based on this and the other evidence in the record, Jackson Bowling argued that it was entitled to a judgment as a matter of law on the following grounds:

> 1. Jackson Bowling owed no duty to protect Decedent Ellington from the violent criminal acts of Hawkins due to lack of foreseeability of that danger, pursuant to the foreseeability analysis outlined in *McClung v. Delta Square Ltd. Partnership*, 937 S.W.2d 891, 894 (Tenn. 1996); and that,

> 2. Even if a legal duty were owed to Decedent Ellington, the comparative fault of Decedent Ellington, in participating in and escalating the altercation with Hawkins' group from a verbal to a violent physical altercation culminating in his fatal shooting, constituted at least 50% of the total fault proximately causing the injuries asserted by the Ellingtons as a matter of law.

On September 2, 2011, the Ellingtons filed a response opposing Jackson Bowling's summary judgment motion, arguing that genuine issues of material fact remained for trial. In their response, the Ellingtons did not dispute the facts as asserted by Jackson Bowling. They disputed, however, that those facts led to a legal finding that the violent acts that resulted in Decedent Ellington's death were not foreseeable. In support, the Ellingtons submitted the affidavit of Jackson Police Department employee Margaret Savage, along with an attached crime report from the Jackson Police Department. Together these showed numerous crimes in the vicinity of the Jackson Bowling within the year prior to Decedent Ellington's shooting

— four assaults, one to two intimidations, three burglaries, six incidents of vandalism, one motor vehicle theft, and ten other thefts. The Ellingtons' response pointed out that, of those crimes, two assaults and three incidents of vandalism had occurred on the bowling alley premises itself. They further argued that the proportion of the culpability of Decedent Ellington vis-á-vis Jackson Bowling's culpability, and the reasonableness of Decedent Ellington's conduct, were questions of fact for the jury. Therefore, they argued, whether Jackson Bowling owed a duty to Decedent Ellington and the extent of Decedent Ellington's fault were issues for a jury, and Jackson Bowling was not entitled to summary judgment.

Jackson Bowling's reply to the Ellingtons' response to the summary judgment motion attached a statement of additional facts and a supplemental affidavit by Andy Kim. It also attached an affidavit by Jackson Bowling attorney Tom Clary with his research on where the criminal incidents noted by the Ellingtons occurred and the distance from Jackson Bowling.

The trial court conducted a hearing on Jackson Bowling's motion for summary judgment.[3] At the conclusion of the hearing, the trial court issued an oral ruling granting summary judgment in favor of Jackson Bowling, based on the theories advanced in the summary judgment motion.[4]

On January 5, 2012, the trial court entered a written order on the motion. It stated:

> . . . [T]he Court finds that applying the summary judgment standard set forth by the court in **Hannan v. Alltel Pub. Co.**, 270 S.W.3d 1 (Tenn. 2008) said Motion is well taken and should be granted as:
>
> 1. Under the analysis outlined by the Tennessee Supreme Court in **McClung v. Delta Square Ltd. Partnership**, 937 S.W.2d 891 (Tenn. 1996), Defendants owed no legal duty of care to Plaintiffs' decedent, Jerome Ellington, to protect him from the violent criminal acts of the individual responsible for his murder as the evidence in the record before the court of prior criminal activity on Defendants' premises and the immediate vicinity prior to the occurrence does not rise to the level necessary to establish that the criminal act was foreseeable; and

---

[3]At the hearing, the trial judge commented that he had presided over the murder trial of Hawkins, in which Hawkins was found guilty of murdering Decedent Ellington, but emphasized that information from that trial did not factor into his analysis of the instant civil lawsuit.

[4]Although the appellate record does not include a transcript of the hearing, it includes a transcript of the trial court's oral ruling. That oral ruling was not incorporated by reference into the trial court's written order.

2.  Even if a legal duty were owed, taking the undisputed facts in the light most favorable to the Plaintiffs, as a matter of law, reasonable minds could not differ but to find that the acts of Plaintiffs' decedent, Jerome Ellington, in placing himself in an environment where gang related activity and violence was occurring, in participating in said altercation and throwing the first punch culminating in physical violence between the two groups accounted for . . . 50% or more of the total fault proximately resulting in Plaintiffs' claimed injuries and damages thus barring Plaintiffs from recovering herein

From this order, the Ellingtons now appeal.

## ISSUES ON APPEAL AND STANDARD OF REVIEW

On appeal, the Ellingtons challenge the trial court's grant of summary judgment in favor of Jackson Bowling. The trial court's resolution of a motion for summary judgment is a conclusion of law, which we review *de novo* on appeal, according no deference to the trial court's decision. ***Martin v. Norfolk S. Rwy. Co.***, 271 S.W.3d 76, 84 (Tenn. 2008). Summary judgment is appropriate only when the moving party can demonstrate that there is no genuine issue of material fact, and that it is entitled to judgment as a matter of law. Tenn. R. Civ. P. 56.04; *see **Hannan v. Alltel Publ'g Co.***, 270 S.W.3d 1, 5 (Tenn. 2008); ***Byrd v. Hall***, 847 S.W.2d 208, 214 (Tenn. 1993).

Whether the trial court's grant of summary judgment was appropriate must be considered in light of the standard enunciated in ***Hannan v. Alltel Publishing Company***.[5] The Tennessee Supreme Court recently expounded on the ***Hannan*** standard:

In ***Hannan***, this Court reaffirmed the basic principles guiding Tennessee courts in determining whether a motion for summary judgment should be granted, stating:

The moving party has the ultimate burden of persuading the court that "there are no disputed, material facts creating a genuine issue for trial . . . and that he is entitled to judgment as a matter of law." ***Byrd***, 847 S.W.2d at 215. If the moving party makes a properly supported motion, the burden of production

---

[5]The Tennessee General Assembly has enacted legislation changing the summary judgment standard from that which is set forth in ***Hannan.*** The new statute, however, applies only to cases filed on or after July 1, 2011, and thus is not applicable to this appeal. ***See*** Tenn. Code Ann. § 20-16-101 (Supp. 2012).

then shifts to the nonmoving party to show that a genuine issue of material fact exists. *Id.* . . .

. . . .

. . . [I]n Tennessee, a moving party who seeks to shift the burden of production to the nonmoving party who bears the burden of proof at trial must either: (1) affirmatively negate an essential element of the nonmoving party's claim; or (2) show that the nonmoving party cannot prove an essential element of the claim at trial.

*Hannan*, 270 S.W.3d at 5, 8-9. It is insufficient for the moving party to "merely point to omissions in the nonmoving party's proof and allege that the nonmoving party cannot prove the element at trial." *Id.* at 10. "Similarly, the presentation of evidence that raises doubts about the nonmoving party's ability to prove his or her claim is also insufficient." *Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 84 (Tenn. 2008). If the party moving for summary judgment fails to satisfy its initial burden of production, the burden does not shift to the nonmovant and the court must dismiss the motion for summary judgment. *Hannan*, 270 S.W.3d at 5; *Blanchard v. Kellum*, 975 S.W.2d 522, 525 (Tenn. 1998).

*Sykes v. Chattanooga Hous. Auth.*, 343 S.W.3d 18, 25-26 (Tenn. 2011) (footnote omitted). Thus, under *Hannan*, Jackson Bowling is entitled to summary judgment on all of the Ellingtons' claims only if it either affirmatively negates an element of each claim or establishes that the Ellingtons cannot prove an essential element of their claims at trial. If it does either, the burden then shifts to the Ellingtons to establish that a genuine issue of material fact exists for trial. If it does neither, then the motion for summary judgment must be denied. *Id.*

## ANALYSIS

### *McClung* Duty

The Ellingtons argue that the trial court erred in concluding that, as a matter of law, Jackson Bowling had no legal duty to protect Decedent Ellington from the criminal act that resulted in his death. They argue that the evidence before the trial court was sufficient to create a genuine issue of material fact as to whether a legal duty existed in this case under the analysis in *McClung*. For that reason, they insist that Jackson Bowling was not entitled to summary judgment on the issue of duty.

A brief review of the law in this area is helpful to our analysis on appeal. To establish a claim for negligence, a plaintiff must prove: "(1) a duty of care owed by defendant to plaintiff; (2) conduct below the applicable standard of care that amounts to a breach of that duty; (3) an injury or loss; (4) cause in fact; and (5) proximate, or legal, cause." *Giggers v. Memphis Hous. Auth.*, 277 S.W.3d 359, 364 (Tenn. 2009) (quoting *McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn. 1995)). At this juncture, we focus on the first element, whether Jackson Bowling owed a duty to Decedent Ellington. In general, in cases involving premises liability, the premises owner has a duty to exercise reasonable care under the circumstances to prevent injury to persons lawfully on the premises.[6] *Eaton v. McLain*, 891 S.W.2d 587, 593-94 (Tenn. 1994). The more specific question of whether a premises owner has a duty to protect customers from the criminal acts of third parties is determined by application of the analysis set forth in *McClung v. Delta Square Ltd. Partnership*, 937 S.W.2d 891 (Tenn. 1996).

As background, prior to *McClung*, premises owners in Tennessee had no duty to protect customers from the criminal acts of third parties "unless they know or have reason to know that acts are occurring or about to occur on the premises that pose imminent probability of harm to an invitee." *Cornpropst v. Sloan*, 528 S.W.2d 188, 198 (Tenn. 1975). Under the *Cornpropst* standard, the "[c]onditions in the area [of the defendant business] are irrelevant." *Id.* at 197. As recognized by the dissenting justice in *Cornpropst*, the Court's ruling "afford[ed] virtually no protection to shopping center invitees . . . and virtually immuniz[ed] the owner against liability." *Id.* at 200 (Henry, J., dissenting); *see Weaver v. Four Maples Homeowners Ass'n*, No. M2011-01101 -COA-R3-CV, 2011 WL 5054698, at *5-7 (Tenn. Ct. App. Oct. 24, 2011) (discussing *Cornpropst* and its progeny).

In October 1996, the Supreme Court in *McClung* overruled *Cornpropst*. In *McClung*, a woman in a shopping center parking lot was forced into her car at gunpoint. After the victim's abductors drove away, they raped her and put her into the trunk of her car, where she suffocated. *McClung*, 937 S.W.2d at 893-94. The victim's husband sued the owner of the shopping center; he claimed that the shopping center owner was negligent for failing to provide security for the parking lot, and that its negligence was the proximate cause of the victim's death.[7] The trial court reluctantly granted the owner's motion for summary judgment, and the intermediate appellate court affirmed that decision, noting that it was constrained to do so by the Supreme Court's decision in *Cornpropst*. *See id.* at 894. The

---

[6]This duty is based upon the assumption that the property owner has superior knowledge of any perilous condition that may exist on the property. *See, e.g., Dobson v. State*, 23 S.W.3d 324, 330 (Tenn. Ct. App. 1999).

[7]The victim's husband sued both the property owner and the tenant business that was renting the part of the property where the attack occurred.

Supreme Court granted certiorari in order "to review the standard for determining business owner liability for injuries occurring on the business premises and caused by the criminal acts of third parties." *Id.* at 893.

After a thorough analysis of the issue, the Supreme Court followed the majority of jurisdictions in holding that "businesses [must] take reasonable measures to protect their customers from foreseeable criminal attacks." *Id.* at 898-99. The *McClung* Court adhered to the general rule that a business "ordinarily has no duty to protect customers from the criminal acts of third parties which occur on its premises," noting that a "business is not to be regarded as the insurer of the safety of its customers, and it has no absolute duty to implement security measures for the protection of its customers." *Id.* at 902. Nevertheless, it held that a business has "a duty to take reasonable steps to protect customers . . . if the business knows, or has reason to know, either from what has been or should have been observed or from past experience, that criminal acts against its customers on its premises are reasonably foreseeable, either generally or at some particular time." *Id.*

To assess whether a criminal act is "reasonably foreseeable," the Court adopted a balancing approach in which the degree of foreseeability of the harm is balanced against the burden of the duty to be imposed on the premises owner. *Id.* at 901. The *McClung* Court explained:

> In cases in which there is a high degree of foreseeability of harm and the probable harm is great, the burden imposed upon the defendant may be substantial. Alternatively, in cases in which a lesser degree of foreseeability is present or the potential harm is slight, less onerous burdens may be imposed. By way of illustration, using surveillance cameras, posting signs, installing improved lighting or fencing, or removing or trimming shrubbery might, in some instances, be cost effective and yet greatly reduce the risk to customers. . . . The degree of foreseeability needed to establish a duty of reasonable care is, therefore, determined by considering both the magnitude of the burden to defendant in complying with the duty and magnitude of the foreseeable harm.

*Id.* at 902 (citation omitted). Based on this analysis, the *McClung* Court reversed the grant of summary judgment in favor of the defendant shopping center owner and remanded the case to the trial court for further proceedings. *Id.* at 904-05.

In the instant case, the trial court held that, under *McClung*, Jackson Bowling owed no legal duty of care to Decedent Ellington because "the evidence in the record before the court of prior criminal activity on [Jackson Bowling's] premises and the immediate vicinity prior to the occurrence does not rise to the level necessary to establish that the criminal act was foreseeable." On appeal, the Ellingtons argue that the crime reports on which Jackson

Bowling relied did not negate the existence of a duty of care to Decedent Ellington, as is required under *Hannan*. They contend that the crime records to which the trial court referred actually *create* a fact question as to the degree of foreseeability of Hawkins' crime. The Ellingtons acknowledge that they have uncovered no recent gang-related crimes or violent murders on the Jackson Bowling premises or in the surrounding area, but argue that "there is no requirement that the defendant must anticipate the exact manner of the injury in order to justify a finding of foreseeability." *Weaver*, 2011 WL 5054698, at *7.

In response, Jackson Bowling argues that the trial court correctly granted summary judgment on the issue of duty, because the testimony of Andy Kim and Darren Goldie, together with the undisputed crime statistics in the record, establish that the area surrounding Jackson Bowling and the Jackson Bowling premises itself were free of murders and gang-related crimes in the year prior to the subject incident. Jackson Bowling claims that the crimes in the record did not rise to a level that would allow the court to hold that a murder on the Jackson Bowling premises was foreseeable to a reasonable premises owner. After reviewing the evidence in detail, Jackson Bowling asserts: "Considering the details of the prior criminal activity taking place at Jackson Bowling as relied upon by The Ellingtons, they are unable to come forward with proof sufficient to create an issue of material fact relative to the foreseeability of the subject gang related shooting."

We agree with Jackson Bowling that the crime statistics are relevant to the issue of duty, as acknowledged by the *McClung* Court:

> As a practical matter, the requisite degree of foreseeability essential to establish a duty to protect against criminal acts will almost always require that prior instances of crime have occurred on or in the immediate vicinity of defendant's premises. Courts must consider the location, nature, and extent of previous criminal activities and their similarity, proximity, or other relationship to the crime giving rise to the cause of action. To hold otherwise would impose an undue burden upon merchants.

*McClung*, 937 S.W.2d at 902 (footnote omitted). However, despite its recognition that evidence of prior crimes on the property or in the area is relevant, the *McClung* Court specifically rejected the "prior incidents rule" as overly restrictive. Under that rule, a plaintiff is required to "introduce evidence of prior incidents of crime on or near defendant's premises in order to establish foreseeability." *Id.* at 899-900. If the prior incidents rule is applied, the Court noted, "the first victim always loses, while subsequent victims are permitted recovery." *Id.* (quoting *Isaacs v. Huntington Mem. Hosp.*, 695 P.2d 653, 658 (Cal. 1985), which listed several "fatal flaws" of the prior incidents rule). Consequently, instead of the prior incidents rule, the *McClung* Court adopted a "balancing approach" under

which incidents of prior crimes, or the absence thereof, are not determinative on the issue of foreseeability. ***See generally Weaver***, 2011 WL 5054698, at *7-8 (discussing prior incidents of crime in context of premises liability). Thus, while prior incidents are highly relevant, they are not determinative on the issue of duty, for purposes of summary judgment.

Moreover, we note that Jackson Bowling's argument is predicated on its assertion that the Ellingtons "are unable to come forward with proof sufficient to create an issue of material fact" as to foreseeability. We have previously discussed the high hurdle presented under ***Hannan*** and its progeny for a defendant to obtain summary judgment. In ***White v. Target Corp.***, the Court explained:

> Under ***Hannan***, to obtain summary judgment in its favor, [defendant] Target must *negate* an element of [plaintiff] Mrs. White's claim or show that Mrs. White *cannot* establish the elements of her claim. It is not enough to say, as Target does here, that Mrs. White has *not yet* proffered evidence to substantiate her assertion that the offending ceiling globe contained a security camera. Under that circumstance, Target has not "disprove[d] an essential factual claim" made by Mrs. White, and therefore has not shifted the burden to Mrs. White.

***White v Target Corp.***, No. W2010-02372-COA-R3-CV, 2012 WL 6599814, at *7 (Tenn. Ct. App. Dec. 18, 2012) (quoting ***Martin v. Norfolk So. Rwy***, 271 S.W.3d 76, 84 (Tenn. 2008) (footnote omitted; emphasis in original). In a footnote, the ***White*** Court elaborated:

> Under ***Hannan***, as we perceive the ruling in that case, it is not enough to rely on the nonmoving party's lack of proof even where, as here, the trial court entered a scheduling order and ruled on the summary judgment motion after the deadline for discovery had passed. Under ***Hannan***, we are required to assume that the nonmoving party may still, by the time of trial, somehow come up with evidence to support her claim.

***Id.*** at *7 n.3.

We are mindful that the trial court carefully considered the ***Hannan*** summary judgment standard, and that the issue of whether a duty exists is generally a question of law for the court. ***McClung***, 937 S.W.2d at 894. However, the determination on the issue of duty hinges on questions of fact, such as foreseeability. ***Id.*** at 904-05. In our view, under the ***Hannan*** standard, Jackson Bowling has not *negated* the "duty" element of the Ellingtons' claim, in that it relies on the Ellingtons' "lack of proof" at this point in time. As we have noted, "the ***Hannan*** Court explicitly rejected the 'put up or shut up' standard for summary judgment."

-11-

*Moore v. Butler*, No. W2010-02374-COA-R3-CV, 2011 WL 6004010, at \*7 (Tenn. Ct. App. Dec. 1, 2011) (citing *Hannan*, 270 S.W.3d at 8). In this case, Jackson Bowling has shown only that the Ellingtons have "not yet" come up with proof that Hawkins' actions were foreseeable; it has not shown that the Ellingtons *cannot* prove that Hawkins' actions were foreseeable. *White*, 2012 WL 6599814, at \*7 n.3. We agree with the Ellingtons that Jackson Bowling did not satisfy its burden to negate the element of duty in their negligence claim. Accordingly, we must respectfully conclude that Jackson Bowling is not entitled to summary judgment on this basis.

## Comparative Fault

The Ellingtons next argue that the trial court erred in holding that, as a matter of law, Decedent Ellington was "50% or more" at fault for his injuries by "placing himself in an environment where gang related activity and violence was occurring, in participating in said altercation and throwing the first punch culminating in physical violence between the two groups . . . ." They acknowledge that there is evidence to support a finding of some fault on the part of Decedent Ellington, but they claim that the proper weight to be given the evidence is a matter to be determined by a jury in light of all of the evidence at trial. In essence, the Ellingtons argue that, based on all of the evidence, reasonable minds could differ on whether Decedent Ellington was at least 50% at fault for his injuries.

In response, Jackson Bowling contends that the undisputed evidence in the record shows that Decedent Ellington's own fault was equal to or greater than the fault of Jackson Bowling. Jackson Bowling notes that Decedent Ellington made the decision "to follow the Hawkins Group outside after they had voluntarily left" the bowling alley, "to engage the 'Hawkins group' in a physical altercation" in the parking lot, and to "escalate[] the altercation to one of physical violence by striking the first blow that preceded the resulting brawl." Under those circumstances, Jackson Bowling argues, "reasonable minds could not differ but to find that as a matter of law Jerome Ellington's own negligence and fault were at least equal to and/or greater than any negligence, if any, of Jackson Bowling." Therefore, it argues, the trial court did not err in granting summary judgment in its favor based on Decedent Ellington's degree of fault.

Under the system of comparative fault in Tennessee, comparative fault is an affirmative defense in which an alleged tortfeasor asserts "that a portion of the fault for the plaintiff's damages should be allocated to another tortfeasor." *Banks v. Elks Club Pride of Tenn. 1102*, 301 S.W.3d 214, 220 (Tenn. 2010); Tenn. R. Civ. P. 8.03; *see also McNabb v. Highways, Inc.*, 98 S.W.3d 649, 654 (Tenn. 2003). Under *Hannan*, "a defendant asserting an affirmative defense . . . shifts the burden of production by alleging undisputed facts that show the existence of the affirmative defense." *Hannan*, 270 S.W.3d at 9 n.6. When a

defendant files a motion for summary judgment based on an affirmative defense, the defendant must "conclusively establish [the] affirmative defense" by pointing to undisputed facts that prove the defense. *McMahan v. Sevier County*, No. E2005-02028-COA-R3-CV, 2007 WL 1946650, at \*2 (Tenn. Ct. App. July 3, 2007) (quoting *McCarley v. West Quality Food Serv.,* 960 S.W.2d 585, 588 (Tenn. 1988)). As the moving party, Jackson Bowling bears the burden "to prove the affirmative of its defense . . . ." *Id.* Although it can under some circumstances be the basis for a grant of summary judgment, "comparative fault is typically a question for the trier of fact . . . ." *Norris v. Pruitte*, No. 01A01-9709-CV-00506, 1998 WL 1988563, at \*3 (Tenn. Ct. App. Aug. 24, 1998) (citing John A. Day & Donald Capparella, *Tennessee Law of Comparative Fault*, p. 12-18 (1997)).

After carefully reviewing the record, we must conclude that Jackson Bowling has not "conclusively established" that the comparative fault of Decedent Ellington was 50% or more of the total fault for his injuries. We note that, in its answer, Jackson Bowling asserted that the "negligence or actions" of Hawkins were the proximate cause of Decedent Ellington's death, and that Hawkins' actions were the superseding or intervening cause of Decedent Ellington's death. The analysis on superseding and/or intervening cause involves the same foreseeability considerations that are discussed above in the analysis of Jackson Bowling's duty to Decedent Ellington. *See Potter v. Ford Motor Co.*, 213 S.W.3d 264, 273-75 (Tenn. Ct. App. 2006). As we have indicated, the trial court held that Decedent Ellington was liable for "50% or more of the total fault proximately resulting in [his] claimed injuries and damages . . . ." From our review of the written order granting summary judgment and the trial court's oral ruling, it is unclear whether the trial court considered Hawkins' proportion of fault in assessing the fault of Decedent Ellington, and if so to what extent. The trial court did not explicitly address how the criminal acts of Hawkins, a non-party tortfeasor, should be considered in the analysis of the parties' comparative fault, or whether including Hawkins in the comparison of fault is even permissible. This can be a problematic determination. *See Haynes v. Hamilton County*, 883 S.W.2d 606, 612 (Tenn. 1994) (discussing the comparison of the criminal act of third party); *see generally* John A. Day, Donald Caparella, and John Walker Wood, 17 *Tenn. Practice, Tenn. Law of Comparative Fault* §§ 6:6, 6:10 (2d ed. 2012). This information on the trial court's analysis is necessary for us to review the grant of summary judgment on the basis of comparative fault.

Moreover, our holding that Jackson Bowling failed to establish that the plaintiffs *cannot* show that Hawkins' criminal acts were foreseeable makes it premature at this point to compare Decedent Ellington's alleged negligence with other potential tortfeasors and find, as a matter of law, that Decedent Ellington's proportion of the "total fault" for his injuries was at least 50%. Thus, we must respectfully hold that the grant of summary judgment on this basis was improper.

Accordingly, we must reverse the trial court's grant of summary judgment in favor of Jackson Bowling on the basis that Decedent Ellington was "50% or more" at fault for the events that resulted in his death.

### Negligence in Duty Undertaken (Misfeasance)

In Count II, the Ellingtons claimed that Jackson Bowling undertook the duty to provide security, and that it therefore assumed the duty to do so in a non-negligent/non-reckless manner. This claim is based on the principle that, "'[o]ne who assumes to act, even though gratuitously, may thereby become subject to the duty of acting carefully.'" *Biscan v. Brown*, 160 S.W.3d 462, 482-83 (Tenn. 2005) (quoting *Stewart v. State*, 33 S.W.3d 785, 793 (Tenn. 2000)); *see* Restatement (2d) of Torts § 324A (1965).

The Ellingtons acknowledge that the trial court did not specifically address whether Jackson Bowling had a duty of care based on its decision to voluntarily provide "crowd control" personnel for the safety of its patrons. However, the trial court granted summary judgment in favor of Jackson Bowling on all issues and dismissed the plaintiffs' case with prejudice. We decline to address an issue not specifically addressed by the trial court below, and we remand any issues not addressed for the trial court to decide in the first instance. *See, e.g.*, *Plants, Inc. v. Fireman's Fund Ins. Co.*, No. M2011-02063-COA-R3-CV, 2012 WL 3291805, at *12 (Tenn. Ct. App. Aug. 13, 2012) (declining to address an issue not first addressed by the trial court). Nevertheless, we reverse the grant of summary judgment in its entirety, and we remand the entire case for further proceedings.

### CONCLUSION

The decision of the trial court is reversed and the cause is remanded for further proceedings consistent with this opinion. Costs on appeal are to be taxed to Defendants/Appellees Jackson Bowling & Family Fun Center, L.L.C., and Jackson Bowling & Recreation Center, Inc., for which execution may issue, if necessary.

 

 

_____
HOLLY M. KIRBY, JUDGE