# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
Assigned on Briefs March 4, 2013

## NICOLE GOESER, ET AL. v. LIVE HOLDINGS CORPORATION, ET AL.

**Appeal from the Circuit Court for Davidson County**
**No. 10C1260, 10C727      Hamilton V. Gayden, Jr., Judge**

---

**No. M2012-01241-COA-R3-CV - Filed September 4, 2013**

---

A patron at a sports bar shot and killed a man without threat or warning. The widow of the murdered man and his daughter filed separate lawsuits which were later consolidated, naming the owner of the bar as defendant, and claiming that the victim's death was the result of inadequate security on the premises. The defendant filed a motion for summary judgment contending that he did not violate any duty owed to the plaintiffs, because the shooting that occurred was completely unforeseeable under the circumstances. The trial court granted the summary judgment motion. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

PATRICIA J. COTTRELL, P.J., M.S., delivered the opinion of the Court, in which FRANK G. CLEMENT, JR. and ANDY D. BENNETT, JJ., joined.

Daniel Lyn Graves II, Murfreesboro, Tennessee, for the appellants, Nicole Goeser, Wife and next, Friend of Benjamin Goeser, Deceased, and Nicole Goeser, Individually.

Russell E. Reviere, Keely N. Wilson, Erin Melton Shea, Jackson, Tennessee, for the appellees, Live Holdings Corporation, Johnny's Bar and Grill, Jonathon Steinberg, Individually, Hank Wise, Individually, and Marathon Properties, LLC.

## OPINION

### I. A SENSELESS CRIME

This case arose out of a senseless and tragic crime - the murder of Benjamin Goeser by a man named Hank Wise. Although Mr. Wise is one of the named defendants in the civil lawsuit that is the subject of this appeal, the issues before us solely involve the question whether the owner of the establishment where this crime occurred could be held liable. A

brief account of the circumstances leading to that crime is therefore in order.

Benjamin Goeser and his wife Nicole Goeser started a business producing and leading karaoke shows in Nashville. The business developed to the point that Nicole, with the assistance of her husband, was leading karaoke shows several nights a week at different establishments in town. One customer who showed up at some of their downtown shows was a man they knew only as Hank. As Ms. Goeser's deposition indicates, friendly interaction between leaders and participants is an integral part of the karaoke experience.

Hank would sometimes participate in karaoke evenings by getting up and singing. On one occasion, he expressed his admiration of Nicole by announcing that he was dedicating a song to her. Another time, as she passed through the crowd with a tip jar, he placed a $100 bill in her hand. Nicole used a MySpace account to stay in contact with fans and to keep them informed about upcoming shows. Hank was one of her MySpace contacts. But after he used the connection to ask Nicole inappropriate questions about her marriage and her husband, she became upset and removed him from her list of contacts on the network.

Hank appeared at a karaoke evening shortly thereafter. Ben sat down with him on that occasion, told him his postings on MySpace were inappropriate, and he asked Hank to leave his wife alone. For his part, Hank denied that the postings were his and claimed the whole thing was just some sort of misunderstanding. According to Nicole, the conversation between Ben and Hank was very low-key and non-confrontational. Hank came to two karaoke evenings afterwards. Nicole did not see him sit down, and he did not participate in singing. He just stood and stared at her in a strange way that she said made her feel very uncomfortable.

On the evening of Thursday, April 2, 2009, Ben and Nicole were leading a karaoke group at Johnny's Bar and Grille near the intersection of Nolensville Road and Old Hickory Boulevard in Nashville. Hank came in wearing a tan jacket that was zipped up. He took a seat at a table behind Nicole, who was sitting at her computer preparing a list of songs for the evening. Ben sat down at the table with Hank and started talking to him. According to Nicole's deposition, she looked over at her husband and she did not notice any signs of distress on his face as he spoke to Hank. However, because Hank had never come to Johnny's before and because it is quite far from the downtown venues where she had previously seen him, Nicole suddenly realized that she was being stalked, and that she wanted Hank to leave.

She got up and told Jennifer King, the restaurant manager, that a customer was making her feel very uncomfortable and that she wanted her to tell him to leave. She pointed Hank out to the manager as he was returning from the bathroom. Jennifer and her boyfriend,

who tended bar at Johnny's, then approached Hank. Jennifer told him that he couldn't stay because he was making someone uncomfortable. Hank asked who that was. Jennifer said, "I think you know who." Hank then said, "Okay, I need to go to the bathroom." Jennifer replied, "Well, you already just came from the bathroom, you should probably just leave." Jennifer recalled that she thought the conversation was over at that point and that Hank seemed extremely calm.

As Jennifer turned away, Hank took a few steps back, unzipped his jacket, reached in, pulled out a gun, and shot Ben Goeser in the head several times. As he started walking away, Jennifer's boyfriend tackled him, and several customers held him down until the police came. Benjamin Goeser died almost instantly from his wounds.

## II. LEGAL PROCEEDINGS

On February 26, 2010, Nicole Goeser filed a negligence complaint in the Circuit Court of Davidson County. The named defendants were Jonathan Steinberg who owned Johnny's, and the two corporate entities through which he controlled the business (collectively "Owners") as well as Hank Wise.[1] The complaint alleged that Owners were negligent because they failed to protect Benjamin Goeser from injury, failed to provide adequate security at Johnny's, and failed to properly train their employees. They also asserted that Benjamin Goeser's death was the result of Owner's negligence.

On April 1, 2010, Tia Leanne Winford, the adult daughter of Benjamin Goeser, filed a wrongful death complaint in the same court against the same defendants. She made the same allegations of negligent conduct by Owners, but added a claim for loss of parental consortium. Owners answered both complaints, raising two affirmative defenses: that the proximate cause of Benjamin Goeser's death was the intentional and criminal conduct of Hank Wise, and that his intentional and criminal acts "were unknown and unforeseeable to these Defendants and thus no legal duty was owed to the Plaintiff[s]." The two cases were subsequently consolidated.

The depositions of Nicole Goeser, Jonathan Steinberg, Jennifer King and Tia Winford were taken on June 28 and 29, 2011. Owners filed a motion for summary judgment on January 13, 2012. They argued that under Tennessee law, a business is not regarded as the insurer of the safety of its customers, but is only required to take reasonable steps to protect

---

[1]The establishment where the murder of Ben Goeser occurred changed hands several times during the course of its history, and was known by different names at different times. Thus, it is variously referred to in the record as Jonathan's, Jonny's, Johnny's Sports Bar and Johnny's Bar and Grille.

persons from foreseeable criminal acts by third parties. *See Giggers v. Memphis Housing Authority,* 277 S.W.3d 359, 365 (Tenn. 2009); *McClung v. Delta Square Ltd.*, 937 S.W.2d 891 (Tenn. 1996). They contended that deposition testimony showed that the murder of Benjamin Goeser was not foreseeable and, thus, that they had not been required to take any additional steps to bolster their security beyond their regular practices.

The court examined the written submissions presented by the parties, including the depositions, Plaintiffs' statement of undisputed material facts and Owners' response to that statement. It also heard oral argument, and it subsequently ruled from the bench. The court's determination was memorialized in an order entered on May 2, 2012, which granted summary judgment to all defendants except for Hank Wise. The court certified its order as final under Tenn. R. Civ. P. 54.02, "there being no just reason for delay." Nicole Goeser appealed.

### III. THE STANDARD OF REVIEW

The requirements for a grant of summary judgment are well known. Summary judgment may be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Tenn R. Civ. P. 56.04. *See also*, *Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 83 (Tenn. 2008); *Penley v. Honda Motor Co.*, 31 S.W.3d 181, 183 (Tenn. 2000); *Byrd v. Hall*, 847 S.W.2d 208, 215 (Tenn. 1993).

When considering a summary judgment motion, the trial court must view the evidence in the light most favorable to the non-moving party, draw all reasonable inferences in the non-moving party's favor, and discard all countervailing evidence. *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997); *Byrd v. Hall*, 847 S.W.2d at 210–11. Accordingly, the court is not to "weigh" the evidence when evaluating a motion for summary judgment, or substitute its judgment for that of the trier of fact. *Martin v. Norfolk Southern Railway Co.*, 271 S.W.3d at 87; *Byrd v. Hall*, 847 S.W.2d at 211.

A trial court's decision on a motion for summary judgment enjoys no presumption of correctness on appeal. *Martin v. Norfolk Southern Railway Co.*, 271 S.W.3d at 84; *Blair v. West Town Mall*, 130 S.W.3d 761, 763 (Tenn. 2004). We review the summary judgment decision as a question of law. *Id.* Accordingly, this court must review the record *de novo* and make a fresh determination of whether the requirements of Tenn. R. Civ. P. 56 have been met. *Eadie v. Complete Co., Inc.*, 142 S.W.3d 288, 291 (Tenn. 2004); *Blair v. West Town Mall*, 130 S.W.3d at 763.

In our review, we must also consider the evidence presented at the summary judgment stage in the light most favorable to the non-moving party, and we must afford that party all the reasonable inferences to be drawn from that evidence. *Green v. Green,* 293 S.W.3d 493, 514 (Tenn. 2009); *Doe v. HCA Health Services, Inc.*, 46 S.W.3d 191, 196 (Tenn. 2001); *Memphis Housing Authority v. Thompson*, 38 S.W.3d 504, 507 (Tenn. 2001).

## IV. A BUSINESS OWNER'S DUTIES TOWARDS ITS CUSTOMERS

A plaintiff asserting a negligence claim is required to prove the following elements: (1) a duty of care owed by the defendant to the plaintiff; (2) conduct by the defendant falling below the standard of care amounting to a breach of the duty; (3) an injury or loss; (4) causation in fact; and (5) proximate causation. *Rice v. Sabir,* 979 S.W.2d 305 (Tenn. 1998); *McCall v. Wilder,* 913 S.W.2d 150, 153 (Tenn. 1995). The existence or non-existence of a duty owed to a plaintiff by a defendant has long been held to be a question of law to be determined by the courts. *Giggers v. Memphis Housing Authority,* 277 S.W.3d 359, 365 (Tenn. 2009); *Blair v. Campbell,* 924 S.W.2d 75, 78 (Tenn. 1996); *Bradshaw v. Daniel*, 854 S.W.2d 865, 869 (Tenn. 1993); *Dill v. Gamble Asphalt Materials,* 594 S.W.2d 719, 721 (Tenn. Ct. App. 1979).

The trial court in this case concluded that Owners were entitled to summary judgment because no duty of care arose on their part towards Ben Goeser or his family members under the circumstances that led to his murder. The plaintiffs argue on appeal that contrary to the trial court's determination, Owners did owe a duty to protect Ben Goeser from the criminal conduct of Hank Wise and that they breached that duty by their inaction, specifically by their failure to have a trained security guard working at Johnny's Bar and Grill on the night of the murder or to give their employees adequate training to protect their guests. In order to address their argument, we must first discuss the nature and extent of the duty a business establishment owes to individuals injured by crimes that occur on its premises.

Some years ago, our Supreme Court took a very narrow view of such a duty, holding that shop owners did not owe customers any duty to protect them from the criminal acts of third parties, except when the owner knew or should have known that such acts were occurring or about to occur. *Cornprobst v. Sloan*, 528 S.W.2d 188, 198 (Tenn. 1975)(*Henry, J. dissenting*). But in the more recent case of *McClung v. Delta Square Ltd.*, 937 S.W.2d 891 (Tenn. 1996), the court explicitly overruled its previous decision in *Cornpropst v. Sloan*, characterizing it as "obsolete." *McClung*, 937 S.W.2d at 900.

In the *McClung* case, a woman was abducted at gunpoint by a stranger in the parking lot of a Memphis shopping mall, and later raped and murdered. Her husband brought suit against the operators of the mall and against Wal-Mart, the anchor tenant at the mall, on

behalf of himself and the couple's three children. He contended that the defendants were negligent in failing to provide security for the parking lot and that their negligence was the proximate cause of his wife's death. The trial court granted summary judgment to the defendants in reliance on the then-prevailing rule in *Cornprobst,* because the defendants did not know and could not have known that an abduction was about to occur. This court affirmed, and Mr. McClung appealed to the Tennessee Supreme Court.

The Court noted that there was a trend in many jurisdictions, including Tennessee, to expand the obligations of businesses to protect customers from the criminal acts of third parties on their premises, even when the exact nature of such crimes and the identity of such perpetrators could not be known ahead of time. The court found that Mr. McClung had produced evidence that the defendant shopping mall was located in a high-crime area, and that numerous criminal acts had been reported to the police as occurring on or near the defendants' premises in the seventeen months prior to the abduction of Ms. McClung.

These included a bomb threat, fourteen burglaries, ten robberies, thirty-six auto thefts, ninety larcenies and an attempted kidnaping. Mr. McClung also offered proof that other nearby major retail centers had utilized security measures in their parking lots. The manager of the Wal-Mart store acknowledged the prevalence of crime in the area and took precautions to protect his merchandise from theft. But the defendants did not take any measures to protect the safety of the customers who used their parking lot.

The Supreme Court held that the proof presented by plaintiff would support a finding that the risk of injury to Ms. McClung was reasonably foreseeable. While affirming the well-established principle that businesses are not insurers of their customers' safety, the court announced a new standard of duty, declaring that business owners were obligated "to take reasonable measures to protect their customers from foreseeable criminal attacks." *McClung v. Delta Square Ltd.*, 937 S.W.2d at 899. However, no duty arises when a risk is not generally foreseeable. *See Giggers v. Memphis Housing Authority,* 277 S.W.3d at 365.

The Court acknowledged that it would be difficult to fashion any sort of bright line rule to define exactly how foreseeable a criminal attack would have to be before it triggered a business's duty to take steps to protect customers and other invitees or exactly what security measures would be needed to satisfy that duty. The court accordingly adopted a "balancing approach" which seeks to balance the degree of foreseeability of harm to the plaintiff against the burden that would be imposed on the defendant if it were required to engage in an alternative course of conduct that could have prevented the harm. *McClung v. Delta Square Ltd.*, 937 S.W.2d at 901. *See, also*, *Satterfield v. Breeding Insulation Co.*, 266 S.W.3d 347, 365 (Tenn. 2008).

Because the kidnaper was completely unknown to Ms. McClung or to the defendants, the court emphasized the importance of patterns of crime in determining whether a risk was foreseeable enough to trigger a duty to on the part of a defendant business to take steps to protect against it.

> As a practical matter, the requisite degree of foreseeability essential to establish a duty to protect against criminal acts will almost always require that prior instances of crime have occurred on or in the immediate vicinity of defendant's premises. Courts must consider the location, nature, and extent of previous criminal activities and their similarity, proximity, or other relationship to the crime giving rise to the cause of action. To hold otherwise would impose an undue burden upon merchants

*McClung v. Delta Square Ltd.,* 937 S.W.2d at 902.

Foreseeability may also arise from more specific knowledge, such as when an identifiable individual acts in such as way as to suggest criminal intentions or proclivities. For example, in *Giggers v. Memphis Housing Authority,* a public housing tenant shot and killed another tenant. The court noted that when an injury is not foreseeable, a criminal act by a third party constitutes "a superseding, intervening cause of harm, relieving the [defendant] of liability." *Giggers v. Memphis Housing Authority,* 277 S.W.3d at 367 (quoting *Doe v. Linder Construction Co.*, 845 S.W.2d 173, 178 (Tenn. 1992)). However, because the shooter in *Giggers* had previously stabbed another tenant in his building, the court found that the danger was foreseeable and that the defendant housing authority had a duty to take reasonable measures to protect its tenants from him.

*Staples v. CBL & Associates, Inc.*, 15 S.W.3d 83 (Tenn. 2000) was another case involving a specific threat. Anita Staples was shopping in a Chattanooga mall and became frightened because she noticed a man who appeared to be following her from store to store and watching her closely. Visibly shaken and upset, she told two Proffitts Department Store employees about the stalker. One of them offered to watch as she left to make sure that the man did not follow her. But the employee got busy with a customer and forgot to watch.

Ms. Staples continued shopping at several stores in the mall. She returned to Proffitts, thinking she would be safe there because the store employees had been notified about her concern. As soon as she entered the store, however, the man abducted her at gunpoint, forced her into her truck, and ordered her to drive south on the interstate.

Ms. Staples sued the department store, the mall, and the mall's security service for negligently failing to protect her and failing to maintain an adequate security system. The trial court granted summary judgment to the defendants, holding that they did not owe Ms. Staples a duty of care because it could not be foreseen that she would return to the mall to encounter a known danger. This court affirmed.

The Supreme Court reversed the summary judgment, holding that the liability of the defendants was a question for the jury, because "the exchange between Ms. Staples and the two Proffitts employees triggered a duty on the part of Proffitts, the mall, and the security company to take reasonable steps to protect Ms. Staples from the abduction that occurred." *Staples v. CBL & Associates, Inc.*, 15 S.W.3d at 90. In other words, once the defendant's employees were alerted to the existence of the threat, the abduction became sufficiently foreseeable for a duty of care to arise.[2]

## V. THE OWNERS' DUTY IN THE PRESENT CASE

Turning to the present case in light of the holdings in *McClung* and its progeny, we note that Plaintiffs' rely on the allegations in their amended complaint that Owners endangered the safety of those entering the building by not taking precautions to prevent violence there, "despite the knowledge that based upon the high crime area where Johnny's is located that such an occurrence is foreseeable." However, assertions in pleadings are not evidence. *Johnson v. Smith,* 621 S.W.2d 570, 572-3 (Tenn. Ct. App. 1981).

In support of the Owners' motion for summary judgment, Jennifer King testified at deposition that she became the full-time manager at Johnny's in September 2007 when Jonathan Steinberg bought the place and that she remained the manager after he sold it. She stated that she lives in the same neighborhood as Johnny's, "about a minute from the bar," that she does her grocery shopping nearby, and that she feels safe in the neighborhood.

Ms. King's testimony also established that crime was not a common occurrence at Johnny's. She testified that trouble with customers was rare and that there have been no burglaries or thefts at the establishment. She acknowledged that at times she has had to ask a customer to leave and that she had to call the police once when a guest refused to go. She has also sometimes refused to admit an obviously inebriated customer. She recalled a total of two fights that occurred at Johnny's between the time she began working there and the taking of her deposition.

---

[2]In addition to the evidence of the individualized danger, Ms. Staples also submitted proof that 286 criminal incidents had occurred at the mall in the fourteen months preceding her abduction.

The plaintiffs did not offer any evidence to controvert Ms. King's testimony. The plaintiffs in this case, unlike the plaintiffs in *McClung* and *Staples*, did not present any evidence whatsoever to support their characterization of Johnny's neighborhood as a "high crime area." It is well-settled that on a motion for a summary judgment, disputes as to material facts may be created only by affidavits or other sworn evidence of facts, and not merely by unsworn generalized assertions in the pleadings. *Third National Bank in Nashville v. Celebrate Yourself Productions*, 807 S.W.2d 704, 707 (Tenn. Ct. App. 1990); *Wachovia Bank & Trust Co. v. Glass*, 575 S.W.2d 950, 956 (Tenn. Ct. App. 1978).

In the absence of any evidence of prior instances of crime occurring on or in the immediate vicinity of defendant's premises, no question of material fact was raised upon which the trial court could base an inference that the harm that occurred was generally foreseeable.

Looking at the particular facts relevant to foreseeability in this case, Ms. King testified that she had never seen Hank Wise in Johnny's before the night of the murder, that the Goesers had never mentioned him to her, and that nothing about him signaled his potential for violence. She stated that he was about five foot six or seven in height, and weighed about 150 pounds. When she told him he had to leave, he did not act upset or make any threats, but remained calm. Because of his calm demeanor, Ms. King did not fear for her own safety.

Nicole Goeser's own deposition testimony about the conduct of Hank Wise was consistent with Ms. King's. Ms. Goeser testified that in all her prior dealings with Hank Wise, he had never threatened her or acted in such a way as to make her think he was capable of violence. But she wanted him to leave her alone. So when she first saw Hank at Johnny's, she was more annoyed than frightened. She described how it appeared to her when Hank and Ben talked on that night: "And I looked at Ben's face for some kind of distress, and there was no distress at all. So whatever this man was talking to my husband about was completely normal. Ben just looked at me like 'Heck, Nik, I don't know why he's sitting here trying to talk to me.'"

Thus, the plaintiffs did not present evidence disputing any material fact regarding Ms. King's knowledge of Mr. Wise. When Ms. Goeser asked Jennifer King to ask Hank Wise to leave, she did not say anything to suggest that Hank Wise might be dangerous, but only that he was making her feel very uncomfortable. Since Ms. Goeser, who had seen Hank Wise many times at other karaoke venues, did not foresee his potential for violence, it is evident that Ms. King and other employees at Johnny's, who had never seen him before, could not foresee that he was going to act violently, much less pull out a gun and murder Ben Goeser in a restaurant full of witnesses.

Thus, Owners established that there was nothing in the outward behavior of Hank Wise or in any knowledge of past behavior that would have triggered the sort of foreseeability that arises when an individual's conduct signals the possibility of criminal intent. The plaintiffs did not create a question of material fact as to the facts regarding his appearance or actions.[3]

In sum, we agree with the trial court that the Owners established that the crime that took the life of Ben Goeser was not foreseeable. We accordingly affirm the trial court's summary judgment.

## IV.

The judgment of the trial court is affirmed. We remand this case to the Circuit Court of Davidson County for any further proceedings necessary. Tax the costs on appeal to the appellant, Nicole Goeser.

_____
PATRICIA J. COTTRELL, JUDGE

---

[3]Plaintiffs note that the downtown bars where Nicole Goeser performed karaoke always had a security guard on the premises, but that there was no security guard at Johnny's on the night of Ben Goeser's murder. They insist that if there had been a guard on the premises, he could have prevented the murder. Ms. King and Mr. Steinberg both testified that Johnny's contracted with Rock Solid Security to furnish a security guard on Friday and Saturday nights when the bar was more crowded. The primary function of that guard was to check ID's at the door. Ms. King testified that even if there had been a guard on duty on the Thursday night when Ben Goeser was killed, she would not have asked him to tell Hank Wise to leave, but would still have performed that duty herself, and only called the guard if Hank Wise became belligerent. In any event, the potential alternative conduct of the Owners is not relevant in the absence of a duty of care.